No. 30,337.

EDITH C. PETERSON, *Appellee*, v. ELMER H. GRAVES, *Appellant.*

(8 P. 2d 308.)

Opinion filed March 5, 1932.

*C. Vincent Jones,* of Clay Center, *Edgar Bennett* and *A. C. Bokelman,* both of Washington, for the appellant.

*H. E. Harlan* and *A. M. Johnston,* both of Manhattan, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one against the grantee in a deed to recover on a condition in the deed that the grantee should pay plaintiff, who was not a party to the deed, the sum of $5,333. Defendant demurred to plaintiff's evidence, the demurrer was overruled, defendant stood on the demurrer, and the court found for plaintiff. Judgment was rendered accordingly, and defendant appeals.

Plaintiff is a daughter and defendant is a son of John W. Graves,

who died October 3, 1928. The deed in question was dated February 24, 1918, was acknowledged by the grantor on March 8, 1919, and was filed for record on March 10, 1919. The deed contained the following provision:

"Upon the following conditions and not otherwise, and reserving to said grantor, John W. Graves, and his assigns, the use, rents, profits and possession of said premises during the entire lifetime of the said John W. Graves, and upon further condition that the grantee, Elmer H. Graves, shall pay to Mabel Marshall and Edith C. Graves the sum of five thousand three hundred and thirty-three dollars ($5,333) each, within three (3) months after the death of the said grantor, John W. Graves, or the total sum of ten thousand six hundred sixty-six dollars ($10,666), and grantee is to pay the taxes assessed and to be assessed."

Plaintiff is the Edith C. Graves referred to in the deed, and Mabel Marshall is her sister. The petition alleged the deed was delivered to defendant and was accepted by him, and was otherwise sufficient to state a cause of action in favor of plaintiff.

The answer denied the deed was delivered to defendant, denied the deed was accepted by defendant, and continued as follows:

"But that if the court should, nevertheless, hold that the facts of the case would otherwise constitute in law a delivery and acceptance, yet that same was and is of no validity because of mutual mistake of fact upon the part of said John W. Graves and this defendant, . . ."

The answer then alleged that shortly before February 24, 1919, an oral agreement was made between John W. Graves and defendant whereby John W. Graves was to convey the land to defendant on the condition, among others, expressed in the deed; alleged the deed was signed, acknowledged, and recorded; alleged that John W. Graves recorded the deed; and alleged facts relating to mutual mistake. The answer alleged discovery of the mistake and correction of it by a new deed, executed in April, 1921, which provided for payment of $8,000 to Mabel Marshall and nothing to plaintiff. The answer also pleaded estoppel to maintain the action.

The answer alleged that the oral agreement included an agreement that John W. Graves would pay all encumbrances on the land and deed it to defendant free of encumbrance, except taxes; that defendant and John W. Graves knew of a mortgage on the land for $6,500, but did not know of another mortgage for $3,130.05; that the mortgage for $3,130.05 was procured from John W. Graves by fraud, but he did not know about it, and defendant did not know about it; and that this mortgage was filed for record on March 12,

1919, which was two days after the deed sued on was filed for record. The answer also alleged that John W. Graves and defendant did not discover the mutual mistakes in the deed sued on until just prior to April 7, 1921, which was more than two years after the deed was recorded.

The answer was not verified, but plaintiff replied, and assumed the burden of proof at the trial.

In his brief defendant makes the following contentions:

"1. The demurrer to plaintiff's evidence should have been sustained.

"(a) There was no evidence that defendant accepted said deed.

"(b) The deed purported to cast burdens upon defendant and not a benefit.

"(c) There was no presumption of law that defendant accepted this burdensome deed."

We are not now concerned with what there may be in the record favorable to defendant. We are concerned with that only which will support the judgment.

It will be observed the answer admitted execution of the deed sued on pursuant to an agreement that a deed should be made, and admitted the deed was promptly recorded. The answer admitted that neither defendant nor his father knew of anything wrong with the deed until about April 7, 1921. So the deed stood for more than two years as the consummation of an oral agreement to make a deed. It was then discovered there was a mutual mistake in the deed. These facts admitted by defendant tend strongly to refute the defense, "Father did not deliver the deed to me. He recorded it himself, and I did not accept it"; and it does not take much evidence to refute such a defense, made after the father's death.

The relations between defendant and his father were intimate. The evidence was that previous to 1919 plaintiff, who was then a minor, lived at defendant's place, with defendant and her father. Her brother Charles died in 1918, and soon afterward plaintiff left defendant's place. In February, 1919, she was living with her sister, Della Young, and her father lived with defendant, as he did in 1920 and in 1921. Defendant has farmed the land since 1919.

John W. Graves believed he had effected final disposition of the land by the deed, and talked freely about it. The land was known as Charles' land. Della Young testified:

"Talked with John W. Graves about this first deed in July or August, 1919. After the deed had been made in February I asked him if he had deeded Charles' land away, and he told me he had, and I asked him how he deeded it, and he said as near equally as he could, and a short time after that I came to

Washington county and looked at the records, and found he had divided it between three of his children, Elmer, Edith and Mabel.

"Q. Did you discuss with him at a later time the question of why he deeded it that way? A. Yes, I asked him how he came to divide it between three, and he told me that he gave it to Edith, this money, because her quarter section was mostly pasture land, and he thought she needed more from Charles' property on that account.

"The quarter witness spoke of had been deeded to Edith some time before that. . . ."

Thomas Young testified:

"Knew John W. Graves, and talked with him about the deed, the record of which was read in the evidence. Talked to him about it in the summer of 1919. We was eating dinner, my wife and Mr. Graves and I, and he said that he had divided Charles' property. My wife asked him how he had divided it, and he said he had divided it equally.

"Witness had a later talk with him. Q. What was the substance of that talk? A. Well, he said that the reason why he gave Edith $5,333 was on account that he figured that that quarter section lacked $5,000 of being worth as much as the rest of it, there was more pasture land, there was 100 acres of pasture land, and only 60 acres under cultivation.

"Q. That is the quarter section that he gave to Edith? A. That is the quarter section that he gave to Edith. He gave her $5,000 to even up the other quarters."

When defendant was asked to pay the money which the deed required him to pay, he did not say there was no deed because he had never accepted it; he said the deed had been changed.

In view of the foregoing, this court holds there was substantial evidence to prove defendant did accept the deed, and holds the district court was authorized to overrule the demurrer to evidence and find defendant did accept the deed; and the district court was authorized to do this without the aid of any presumption of law or of any presumption of fact. This being true, whether the deed was a benefit or a burden to defendant is immaterial.

Defendant says the deed did not become effective because of his own failure to perform the condition. The deed recited a consideration of one dollar and "other consideration." Calling a provision in a deed a condition does not make the provision a condition. In this instance, the provision constituted in effect a covenant to pay Mabel and Edith, which formed the consideration for the conveyance to defendant. The deed became effective the moment defendant accepted it. From that moment he became bound to satisfy the condition, and his breach of the condition created a cause of action in plaintiff's favor.

Defendant filed a motion for new trial. The grounds of the motion were, first, erroneous rulings of the court; second, the judgment was contrary to the evidence; and third, the judgment was contrary to law. The court did not rule on the motion during the term at which it was made, and at the next term the court held it had no jurisdiction to rule on the motion. It is not necessary to consider the question of practice. Defendant was not harmed unless he had a motion with some merit in it, and for the purpose of determining whether there should be a new trial, the motion may be treated as denied.

The record discloses just three trial rulings adverse to defendant. The following occurred on cross-examination of plaintiff:

"Witness does not know what encumbrance of record was that mentioned in the deed, and did not know of the $6,500 mortgage; but knew about the $3,130 mortgage.

"Defendant asked to introduce the mortgage records showing the mortgages of record at the time of the deed, as a part of the cross-examination, to which plaintiff objected on the ground it was not cross-examination, which objection was sustained by the court."

The ruling was manifestly correct. In making her case the witness had not been asked anything about encumbrances on the land, and defendant was simply trying to get in a part of his defense.

Plaintiff's husband was a witness in her behalf. He testified he learned of the deed to his wife, and testified to a conversation with defendant after the death of John W. Graves in which defendant said the deed had been changed. On cross-examination, the witness said he obtained from the register of deeds a copy of the deed, and also a copy of the deed of 1921, pleaded in the answer. At the close of a cross-examination which wandered far from the direct examination and related to what the witness knew about mortgages on the land, and to the deed having been changed, he was finally asked this question: "You knew that in the first deed Elmer was to pay the taxes?" An objection to the question was sustained. The cross-examination had covered the direct examination, and had proceeded far enough. The deed was the foundation of the claim of witness' wife. The deed was on record, and spoke for itself. The witness admitted getting a copy of it, and could not well have been ignorant of its terms. In the course of the trial his wife testified she went with her sister and read the record of the deed. Whether her husband knew one of its terms was not of the slightest consequence,

and it is not likely a court would grant a new trial because the witness was not permitted to answer that question.

When plaintiff rested, defendant moved—

"To strike from the evidence of the plaintiff all evidence of defendant, Elmer Graves, being in possession of the land described in the deed read in evidence, on the ground and for the reason that it is incompetent, irrelevant, and immaterial, and an attempt to vary and change the terms of a written instrument, the instrument providing on its face that Elmer Graves was not to have possession of the land until after the death of his father, . . ."

The motion was denied. The fact that plaintiff farmed the land did not contradict the deed. The inference would be he farmed it for his father, or under some arrangement with his father. The evidence was relevant and material as a circumstance bearing on defendant's relations with his father, who in the summer of 1919 was talking freely to other members of the family as if the deed had been accepted as a disposition of Charles' land.

The result of the foregoing is that so far as the motion for new trial related to rulings of the court it had no merit. The other grounds of the motion raised no question not raised by the demurrer to the evidence.

The judgment of the district court is affirmed.

JOHNSTON, C. J., not sitting.